UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 13-61546-Civ-SCOLA/SELTZER**

BLUEBERRIES, S.A.,

    Plaintiff,

vs.

FRESH RESULTS, LLC, ERIC R.
CRAWFORD, and AGNES FITTON,

    Defendants.
_____/

FRESH RESULTS, LLC,

Counter-Plaintiff,

vs.

BLUEBERRIES, S.A.,

Counter-Defendant.
_____/

**COUNTERCLAIM**

Counter-Plaintiff, Fresh Results, LLC ("Fresh Results"), hereby files this Counterclaim against Counter-Defendant, BLUEBERRIES, S.A. ("BBSA"), and alleges as follows:

**GENERAL ALLEGATIONS**

*Introduction*

1. This is an action for breach of contract resulting from BBSA's repeated breach of a Distribution Agreement between Fresh Results, as distributor, and BBSA, as supplier. A copy of the Distribution Agreement is attached as an exhibit to Plaintiff's Complaint. [DE 1-1]. As described in more detail below, BBSA breached the Distribution Agreement by, among other things, (a) repeatedly failing to meet its minimum supply obligations, (b) selling blueberries and

1

allowing other companies to distribute and sell its blueberries in breach of its exclusivity obligations, and (c) repeatedly failing to forward inquiries to Fresh Results relating to blueberries as required by the Distribution Agreement.

### *The Parties, Jurisdiction, and Venue*

2. Counter-Defendant BBSA purports to be a company organized and existing under the laws of Argentina that claims to be engaged in the business of growing and shipping wholesale quantities of blueberries in interstate and foreign commerce.

3. Upon information and belief, BBSA is owned and controlled by Ulises C. Sabato ("Sabato").

4. Counter-Plaintiff Fresh Results is a Delaware limited liability company with its principal place of business in Broward County, Florida and is engaged in the business of importing blueberries and other produce for sale within the United States.

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest, fees, and costs.

6. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims involved in this action occurred in this judicial district.

### *The Distribution Agreement Between Fresh Results and BBSA*

7. On or about March 24, 2008, Fresh Results and BBSA entered into the Distribution Agreement.

8. The foundation of the Distribution Agreement and the relationship between Fresh Results and BBSA was Sabato's promise that he would cause BBSA to provide all of the

blueberries generated on Sabato's substantial Argentine farms exclusively to Fresh Results for distribution and sale. In return for that promise, Fresh Results agreed that it would sell all of the blueberries Sabato's farms could generate in return for receiving discounted commissions on those sales.

9. This essential element of the parties' relationship was recognized in the recitals of the Distribution Agreement between Fresh Results and BBSA, which states that "Distributor [*i.e.*, Fresh Results] desires to be Supplier's [*i.e.*, BBSA's] exclusive distributor of the Product globally (the "Territory") and Supplier wishes to engage Distributor as its exclusive distributor of the Product in the Territory." [DE 1-1, p.1]

10. These essential terms were further memorialized in Section 2(a) of the Distribution Agreement, which provides as follows:

> Supplier desires that Distributor effect the marketing, sale, and distribution of the Product [*i.e.*, blueberries] for the purpose of: (i) providing customers in the Territory the opportunity to purchase the Product, and (ii) developing and sustaining a satisfactory volume of sales of the Product in the Territory (collectively, the "Purpose"). To accomplish the aforesaid Purpose, and subject to the terms and conditions set forth herein, Supplier hereby appoints Distributor as its ***exclusive distributor*** in the Territory during the Term (as hereinafter defined)."

(Emphasis added).

11. In addition to appointing Fresh Results as BBSA's exclusive global distributor, the parties further agreed that "Supplier shall forward inquiries from prospective purchasers in the [global] Territory relating to the Product [*i.e.*, blueberries] to Distributor." [Ex. 1, § 8(d)]. One of the primary purposes of this additional provision was to make clear that BBSA was not only obligated to sell all of its blueberries through Fresh Results, but that BBSA was further required to forward all inquiries from others who might potentially purchase the blueberries grown by BBSA so Fresh Results could pursue those sales opportunities as well.

12. During the negotiation of the Distribution Agreement, Sabato represented that his farms could generate approximately $20,000,000.00 worth of blueberries each year for Fresh Results to sell. Sabato made that representation during the parties' negotiations in order to demonstrate the substantial commissions Fresh Results could earn (even at discounted rates) if they dedicated their efforts to selling all of Sabato's blueberries. This was a critical aspect of the parties' deal because without Sabato's assurance that he would deliver certain minimum amounts of blueberries (which was the main consideration he brought to the table) it would not make sense for Fresh Results, through Crawford and Fitton, to dedicate their efforts to being Sabato's sole distributor (which was the main consideration they brought to the table).

13. These are among the reasons the parties included specific minimum supply requirements in the Distribution Agreement. For example, Exhibit 8(a)(1) of the Distribution Agreement expressly provides that:

> ***Supplier shall deliver to Distributor*** and Distributor agrees to accept and cause the sale of ***1,500 tons [i.e., 1,500,000 kilos] of Product in the aggregate during the months of September, October, November, and December each year (the "Product Period")***

(Emphasis added).

14. In fact, these minimum supply requirements were so essential to the parties' deal that the parties expressly agreed that the Distribution Agreement could be terminated if Sabato failed to deliver the minimum supply he had promised. For example, Section 8(a)(3) of the Distribution Agreement specifically states that, "[s]ubject to Section 13 [force majeure, which is not applicable here], if Supplier shall fail to deliver the Minimum Requirements for any Product Period, Distributor ***shall have the right to terminate the within Agreement by written notice to Supplier***." (Emphasis added).

15. The initial "Term" of the Distribution Agreement was five years from the date of execution unless it was renewed or terminated earlier by the parties. That meant the initial Term of the Distribution Agreement was originally set to expire on March 24, 2013.

16. During the first year of the Distribution Agreement, and during every single subsequent year it was in existence, Sabato and BBSA failed to satisfy the minimum supply requirements they had agreed to provide to Fresh Results.

17. BBSA delivered less than two-thirds of the supply requirements each year – and barely one-third in 2011 – resulting in an approximate loss of nearly $4,000,000 in commissions to Fresh Results. Below is a chart summarizing these breaches:

| Product Period Year | BBSA Minimum Supply Requirement (Per Distrib. Agreement Sched. 8(a)) | BBSA Actual Supply to Fresh Results | BBSA Supply Shortfall | Fresh Results' Lost Revenue Resulting from BBSA Supply Shortfall* | Fresh Results' Lost Commissions Resulting from BBSA Supply Shortfall* |
|---|---|---|---|---|---|
| **2008** | 1500 | 958 | 542 | $5,350,988.00 | $428,079.04 |
| **2009** | 1500 | 592 | 908 | $11,361,940.00 | $908,955.20 |
| **2010** | 1500 | 712 | 788 | $9,967,195.00 | $797,375.60 |
| **2011** | 1500 | 587 | 913 | $11,199,357.00 | $895,948.56 |
| **2012** | 1500 | 710 | 790 | $10,423,459.00 | $833,877.00 |
| **Total** | 7500 | 3559 | 3941 | $48,302,939.00 | $3,864,235.40 |

*Approximations based upon average price per kilo, per year, on actual shipments.*

18. Each year, Sabato repeatedly provided assurances that he would meet the minimum supply requirements during the subsequent blueberry season, but he never made good on those promises.

19. One of the reasons Sabato and BBSA were unable to meet the minimum supply requirements is that BBSA, unbeknownst to Fresh Results, was selling blueberries through other

5

companies without forwarding inquiries to Fresh Results, in direct violation of Sections 2(a) and 8(d) of the Distribution Agreement.

20. On September 21, 2012, Fresh Results, through counsel, delivered to BBSA the letter attached hereto as **Exhibit "1."** The letter notified BBSA that it had breached the Distribution Agreement by (a) repeatedly failing to meet the minimum supply obligations; (b) failing to forward inquiries from prospective blueberry purchasers to BBSA, and (c) allowing some of BBSA's blueberries to be distributed through a company other than Fresh Results.

21. Although Fresh Results could have terminated the Distribution Agreement on September 21, 2012, it did not do so. Rather, it attempted to reach a negotiated resolution aimed at addressing BBSA's repeated breaches.

22. Even after BBSA's receipt of the September 21, 2012 letter, BBSA opted not to fulfill its minimum supply obligations under the Distribution Agreement during the 2012 blueberry season by delivering less than half of the minimum requirement.

23. BBSA largely ignored Fresh Results' September 21, 2012 letter and the breaches described therein.

24. Nearly four months later, after Fresh Results' repeated attempts to negotiate a resolution and salvage the parties' relationships were rejected, Fresh Results delivered the letter dated January 7, 2013 attached hereto as **Exhibit "2."**

25. As explained in the January 7, 2013 letter, Fresh Results exercised, among other things, its right to terminate the Distribution Agreement,[1] because Sabato and his companies

---

[1] In that same letter, Fresh Results exercised its right to redeem Sabato's interests in another company Sabato owns and controls, Argentina Blueberry Company, L.L.C. ("ABC"). Shortly after Sabato caused yet another one of his companies, Walinbay, S.A., to file suit against the Defendants in this court (*see Walinbay v. Fresh Results, et al*, Case No. 13-cv-60844-RNS (S.D. Fla. Apr. 11, 2013), Sabato and ABC instituted a separate arbitration action against the same

were engaged in misconduct that, among other things, breached the Distribution Agreement and was (and is) materially injurious to Fresh Results.

26.     In addition, BBSA has purported to assign certain of its rights under the Distribution Agreement to one or more third parties, including Walinbay, S.A., in violation of the provisions in the Distribution Agreement which prohibit such assignments. [*E.g.*, Ex. 1, § 25].

## BREACH OF CONTRACT

27.     Fresh Results incorporates the allegations contained in Paragraphs 1 through 26 as though fully set forth herein.

28.     Fresh Results performed its obligations under the Distribution Agreement.

29.     BBSA breached the Distribution Agreement by, among other things:

   a. failing to meet its minimum supply obligations.

   b. selling blueberries other than through Fresh Results.

   c. allowing companies other than Fresh Results to distribute and sell its blueberries.

   d. failing to forward inquires to Fresh Results relating to blueberries.

   e. purporting to enter into assignments without Fresh Results' consent.

30.     Fresh Results has suffered damages as a direct and proximate result of BBSA's breach of contract.

---

Defendants Sabato has caused BBSA to sue in this case concerning ABC's redemption and related claims.

WHEREFORE, Counter-Plaintiff respectfully requests judgment in its favor, an award of compensatory damages against BBSA, an award of attorneys' fees and costs against BBSA, pre-judgment and post-judgment interest, and such other and further relief this Court deems just and proper.

Respectfully submitted this 8th day of August, 2013.

**By:** *Scott W. Atherton, Esq.*
Scott W. Atherton, Esq.
Fla. Bar No. 749591
scott@athertonlg.com
**ATHERTON LAW GROUP, P.A.**
224 Datura Street, Suite 815
West Palm Beach, Florida 33401
*Attorneys for Defendant*
*Fresh Results, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 8, 2013, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on counsel of record in the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Scott W. Atherton*
SCOTT W. ATHERTON
Fla. Bar No. 749591

## SERVICE LIST

*Blueberries, S.A. v. Fresh Results et al*

**Case No. 13-61546-Civ-SCOLA/SELTZER**

Craig A. Stokes
cstokes@stokeslawoffice.com
Jessie Lopez
jlopez@stokeslawoffice.com
**Stokes Law Office LLP**
3330 Oakwell Court, Suite 225
San Antonio, TX 78218
Tel: (210) 804-0011
Fax: (210) 822-2595

*Counsel for Blueberries, S.A.*


Robert E. Goldman
robert@goldmanlaw.com
**Law Office of Robert Goldman**
1 East Broward Blvd., Ste. 700
Fort Lauderdale, FL  33301
Tel: (954) 745-7450
Fax: (954) 745-7460

*Counsel for Blueberries, S.A.*


Wesley A. Lauer, Esq.
Fla Bar No. 137851
wesley.lauer@akerman.com
**AKERMAN SENTERFITT**
222 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401

*Attorneys for Eric Crawford and Agnes Fitton*